The United States Court of Appeals for the Ninth Circuit is now in session. Yes, good afternoon. I'm Judge Gould. I'm presiding today. Delighted to have the opportunity to sit with my colleagues, Judge Fletcher and Judge Collins. We have three cases to be argued today. But before we start on the argued cases, for the court clerk's benefit, I'm going to note the cases that are submitted on the briefs. The first case on the docket is Joaquin Alvarado v. Garland. That's number 16, 73315 and 17, 71138. And that's submitted on briefs. The second case to be submitted on briefs is Donald Duacoro v. Garland, 18, 71842. That is submitted on briefs. The third case to be submitted on briefs is Drayton v. Eastline Productions, number 19, 55765. That's submitted on briefs. So we'll turn to the first case to be argued today, which is Herrera Petitioner v. Merrick Garland Respondent. And for the petitioner, we have Ms. Medina, I think. And for the respondent, we have Nehal Kamani. Is that pronounced correctly? Is it Nehal or Nehal? It's Nehal, Your Honor. Nehal. Nehal Kamani. I apologize. That's fine. So here we go. Without further ado, we'll start with the petitioner's argument. Case is set for 10 minutes per side. And so Ms. Medina, if you'd like to make a rebuttal argument, please try to stop before all the time is gone. Thank you, Your Honor. Good afternoon. My name is Jenny Medina. May it please the court, my name is Jenny Medina on behalf of Petitioner Marco Vinicius Herrera. I respectfully request three minutes for rebuttal. I'll try to remind you, but try to watch the clock yourself. Yes, of course. Thank you. So the first issue before this court as to Mr. Herrera's petition is credibility. Yes, the board assumed credibility in rendering its decision. However, the immigration court did find the petitioner incredible. And that in and of itself necessitates remand so that there can be a reconsideration of the testimony that Mr. Herrera provided at the court level, all relevant supporting documents, as well as his I-589 application for withholding. Because there was no remand, the board simply relied on what the immigration judge felt was credible, was necessary in initially finding that the withholding application- The board is certainly permitted to take as true, even though there's an alternative adverse credibility finding, the board could say, well, you know, we'll take as true his testimony and then address the other grounds. And if those grounds are sufficient to uphold the denial of relief, why would a remand be required? Because in this instance, the board did not rely on all documentation and all evidence in this matter. The board only relied on two incidents of threat in finding that Mr. Herrera did not suffer past persecution. However, looking through the record, Mr. Herrera also discussed that he had been receiving threats through- Men had been making threatening gestures whenever he returned to his home, his hometown, when he went to go visit his family, as well as also when he received phone calls stating, telling him to stay away from his children and the mother of his children. And because of that, the board, because the board did not take that into consideration, even though they assumed that Mr. Herrera was credible, necessitates that remand. That's really not a question of credibility. That's just, you just say the BIA did not consider all the evidence in the record. Correct. Based on the, even though they found Mr. Herrera credible, they would have been able to consider all, everything that was on the record. And there is no discussion at the board in its decision as to the other incidents. So to review for me, all the threats that you think are relevant. So there were four threats. The first one was when Mr. Herrera saw his son being hit by Epifanio, which then led to the physical altercation and Epifanio threatening Mr. Herrera with death. The second incident was an attempted kidnapping where Epifanio, in a car, told Mr. Herrera to get into the car and pointed a gun at him. That is the second incident. The third incident is when he received phone calls for one to two months, and they kept telling him to stay away from his children and from the mother of his children if he did not want something to happen to them. And then the last one was when he returned to his hometown of Sanarate to visit his children. And he saw these men making threatening gestures at him as well as also having men parked outside of his mother's house. Basically, it's showing that they were watching out for him making sure that he was doing what they told him to do. So which of those threats does the BIA not discuss? The board does not discuss the last two that I listed. The phone calls that he spoke about telling him to stay away from his children and the threatening gestures that he witnessed himself when he would visit his children. Well, but the BIA, I mean, it mentions the two specific threats from Epifanio. But then it goes on to say that the immigration judge appropriately considered the incidents of harm experienced by the respondent cumulatively and concluded that they do not rise to the level of persecution. And then it has a footnote that says we note the respondent claims she last received a threat about six years ago, which was communicated to Guatemala and passed on to him. So they may not have enumerated them specifically, but that seems to indicate that they were aware they were more than the two threats and that they did assess it cumulatively, doesn't it? No, I don't believe so. And that's because the incident that happened six years ago was now going to well-founded fear. He was already in the United States. It wasn't when he was still in Guatemala. So that incident was not considered. And as to the second incident, it is not listed and it's not discussed in the immigration judge's original order stating that, excuse me, it wasn't considered in the immigration judge's original order. And that threat you're talking about now is not a verbal threat. There's no physical altercation with it. It's just his observation of what might be vague hand gestures that he interpreted as threatening. Correct, your honor. Except I would argue that they weren't vague. They were in fact threatening. I believe that somebody could easily decipher a vague threat versus a threatening threat. What is a hand gesture? How does a hand gesture threaten somebody? I would say a threatening hand gesture, and I'm not going to do that out of respect to the court, but pointing a finger as a gun, making the gesture across your neck, implying that I'm going to kill you. This coupled with unknown men or men that were right before his children could be deemed threatening. And did he describe the hand gestures or did he merely characterize them? He only characterized that, but then that goes to one of my other points that the immigration judge failed to probe, inquire, and explore all relevant facts. The immigration judge, while eliciting testimony from Mr. Herrera, never asked what type of gestures they were because the immigration judge never even considered this incident during testimony. Okay, so if he just makes a statement that he received threatening hand gestures and he doesn't describe what those gestures were, like they weren't slicing a throat or a finger pointing like a gun shooting, but he just says, I got menacing gestures. Why shouldn't that be in the category of a vague threat? Well, it could be, it could not be. However, the immigration judge never explored that information when eliciting testimony. And it was only the department at the immigration court level that asked about what if any discrepancies there were between his testimony and what was previously submitted. Okay, so does he have the burden to show entitlement to the relief he's seeking? Yes, he does. However, then that also goes to the fact that Mr. Herrera did not have counsel at his hearing and there was no voluntary waiver of counsel that was done by the immigration judge. Okay, thank you. Yes, and I will stop there to the one minute. You got one minute. I'll tell you what, for planning purposes, we'll give you an extra minute as a pandemic bonus. Thank you, your honor. Two minutes. Okay, please proceed. Good afternoon, your honors. May it please the court, Nail Kamani for the government. The court should deny this petition for review. First, petitioner fails to show that the record compels the conclusion that he's eligible for any relief or protection from removal. In fact, the only application that this court may review is the denial of withholding of removal as he waived review of his denial of his asylum application and cap protection claim. With regards to his withholding of removal application, the record shows that he did not pass persecution. The threats he received were not so menacing as to rise to the level of persecution. He did not suffer any physical harm. He lived at his aunt's home after some of the threats for four months safely and openly. And while he was threatened at one time to get into Epiano's car, and Mr. Epiano brandish some sort of weapon at that time, when Mr. Herrera refused to comply with that demand, he did not suffer any consequences. Upon coming to six years prior to his removal hearing, because the Epiano's family members believe that he had murdered Epiano. Once they discovered that this was not the case because Mr. Herrera was in the United States at the time, no other threats ensued. His sons and other family. What's your response to counsel's point that there were additional threats that were raised and mentioned in the brief before the BIA that are not referenced by the BIA? As you stated, Judge Collins, the board's decision shows that the record was considered cumulatively. There's no indication that the agency did not consider those threats and there that level. This court's case law has made it very clear that threats can constitute persecution, but in rare cases where they rise to the level where they are menacing. Mr. Herrera's actions both in Guatemala and ones here in the United States do not show that he has been affected by these threats to that extent. As I said before, he lived at his aunt's home, which was only a few months without any harm. To the extent that he was scared that these individuals would take some sort of revenge on his family members, they have remained there safely. They have not been threatened. They have not been harmed. And there is nothing in the record to indicate that his fear is anything more than speculative where there has been no continued interest in him. There have been no threats for more than six years prior to his removal hearing. He has not carried his burden to show that he has a well-founded fear of future persecution where no one appears to be interested in him. They have not inquired about his whereabouts. They have not made any threats. May I move on to the second issue, the due process issue that Petitioner raises regarding the denial of his motion to continue to obtain counsel. Mr. Herrera had counsel. He had counsel in preparing his application. He had counsel shortly prior to his initial hearing date when they could not come to a mutual agreement and therefore counsel asked to withdraw from the case. Thereafter, Mr. Herrera's hearing date was pushed a year out. During that time, he had the opportunity to obtain counsel. He knew it was his responsibility to obtain counsel and he knew how to obtain counsel where he had once done it before. Accordingly, when he came before the immigration judge, having not prepared a pre-hearing statement, not having any excuse for not finding representation other than he couldn't find anyone with whom he would agree on how to proceed with his case, the immigration judge properly found that he did not merit a continuance at that point. What about the fact that the immigration judge, setting aside the lack of counsel and the denial of continuance, the judge didn't try and help him out by explaining what the categories were or what the issues were. He just kept saying, what's your social group? Well, I don't know what that means. Well, what's your social group? You said that and don't we expect more from immigration judges in the petitioner, Mr. Herrera here. He was informed to have submitted a pre-hearing statement, which he did not. And even though he did not, the immigration judge proceeded with the case. The pre-hearing notice actually informed Mr. Herrera that his case, his claim could be waived for failure to submit a pre-hearing statement. So the immigration judge gave Mr. Herrera quite a bit of leeway. To the extent that this court might find that the immigration judge should have questioned him or explained to him more about his particular social group. The board did not rely on that finding, did not rely on the finding that Mr. Herrera did not prefer a cognizable social group. And so here it really does not impact the outcome of the case. And as stated in respondents brief, Mr. Herrera is not the typical pro se individual. He had counsel help him prepare his application. He knew what his burden was. He knew what the issues were. He consulted several different attorneys thereafter and could not come to an agreement as to how to proceed with his case. And even on his own before the immigration judge, he requested voluntary departure before the case, before the hearing or the questioning really began, which shows that he knew the types of reliefs that he could ask for, what he was potentially eligible for. So he is not the typical pro se applicant. And here, given that he was preparing his application, his declaration, it shows that he did have knowledge. Now, while he may have wanted a continuance to obtain counsel, the immigration judge was not obligated to give that to him where he could not show good cause for continuance, where he had a year, more than a year to find counsel. And he did not provide any other excuse to show that if given more time, he would be able to find counsel. He had already stated he had met with several attorneys and he couldn't find anyone that would agree with him on how to pursue the case. Counsel, to interject a question. Yes. Do we review that particular issue about whether there should be further continuance to get counsel for abuse of discretion? Yes, your honor. Abuse of discretion is the correct standard on how to review that issue. Thank you. The other due process issue that petitioner raises is immigration judge bias. As the board found, there was no showing of antagonism in this case, especially where the statement requirements. He thoroughly questioned Mr. Herrera and gave him the opportunity to present his case in their appeal brief. Mr. Herrera does not point to any evidence or documentation or anything else that he would have or could have submitted that would have changed the outcome of his case. And therefore, they have not shown prejudice. Given that Mr. Herrera does not eligible for withholding of removal, substantial evidence supports the denial of that form of protection. And there is no due process claim that has merit in this case. The government respectfully requests that this court denies the petition for review. Thank you, your honors. If you have no other further questions for me. So, I am on Judge Fletcher. Judge Collins, no questions. So, thank you, counsel. Thank you. Dave, we'll return to Ms. Medina. Yes. So, as to a waiver of right to counsel and the motion to continue in order to obtain counsel, the record is completely void of any questions as to or not questions, but any statements as to whether or not Mr. Herrera wanted to proceed without counsel. And the immigration judge never looked to see if a waiver had been knowingly or voluntarily done. Generally, in the immigration court, there are... He did inquire and Mr. Herrera had made efforts and he said he had talked to attorneys but that they wouldn't take his case because they thought it was a weak case. So, when he's made efforts and he's talked to people and he's had a year to do it, why does the judge need to do anything further when there's been that ascertainment? Because Mr. Herrera still didn't know that he had the right to counsel. The fact that he understood that he should have counsel is commendable. But especially in immigration cases, which are complex and ever-evolving, the petitioner, an applicant, should have the opportunity to have an attorney present. Additionally, as is general practice at the San Francisco Immigration Court, when there's a motion to withdraw from counsel, generally, the court scheduled a master hearing to give all the advice to the applicant before proceeding to individual adherence. Can I go back to the threats issue? Did you raise in your opening brief this issue that the BIA had overlooked two threats that had been mentioned? Because I don't see it there as an issue in the opening brief. We do generally and we allude to the argument, but we don't directly state it. If there's nothing further, Your Honors, we respectfully request a remand, first as to credibility and as to the violations of due process that Mr. Herrera suffered at the individual merits hearing. Thank you. Thank you, counsel. The Herrera case shall now be submitted. And again, on behalf of the panel, I want to thank counsel, petitioner and counsel for responding for their excellent arguments and for assisting the court. We'll turn to the next case to be argued today.
judges: FLETCHER, GOULD, COLLINS